**LUMBERMEN'S RECIPROCAL ASS'N v. DAY. (No. 1075—5288.)**

Commission of Appeals of Texas, Section B. June 5, 1929.

Touchstone, Wight, Gormley & Price, all of Dallas, for plaintiff in error.

White & Yarborough, of Dallas, for defendant in error.

SHORT, P. J. This suit involves the construction of section 12, art. 8307, of the Workmen's Compensation Act, which is as follows: "Where the liability of the association or the extent of the injury of the employé is uncertain, indefinite, or incapable of being satisfactorily established, the Board may approve any compromise, adjustment, settlement or commutation thereof" that is "made between the parties." In this case it conclusively appears that the defendant in error claimed that he received an injury to one of his eyes on April 19, 1926, while engaged in the work of his employer, who was a subscriber under the Workmen's Compensation Act, with the plaintiff in error, carrying the compensation insurance. The final result was that the injured eye had to be removed, and the other eye became involved by reason of the injury to such extent that the vision is now greatly impaired and may be totally lost. Before the removal of the injured eye, and before the present impairment of the vision of the other eye existed, and at a time when defendant in error was suffering very much from the injured eye, a compromise adjustment of the claim for compensation insurance was made between the adjuster of the insurance company and the defendant in error, by the terms of which defendant in error, was to be paid the sum of $500 in full settlement of the claim, but, before this amount was accepted by the defendant in error, it was increased to $600. This adjustment was submitted, as required by law, to the Industrial Accident Board, together with the reason for making the com-

promise agreement, and was approved, and the money paid, whereupon the defendant in error executed a release. This occurred in August, 1926.

The compromise agreement, among other things, recites that: "The facts and circumstances connected with and surrounding the infliction of the injury make the liability of Lumbermen's Reciprocal Association uncertain and indefinite, or incapable of being satisfactorily established * * * the loss of vision and condition of claimant's eye due to glaucoma. Investigation shows that he had trouble with this eye two years ago. Injury only caused it to be inflamed."

Thereafter an application was made to the Industrial Accident Board to set aside the order approving the agreement, and to open up the matter again, and to grant the defendant in error further relief. This was refused. Thereupon this suit was instituted, and upon a trial, after hearing the evidence, the district judge instructed the jury to return a verdict for the plaintiff in error. This was done, and judgment was entered accordingly. Upon appeal to the Court of Civil Appeals at Dallas, the judgment of the district court was reversed, and the case remanded for another trial. 8 S.W.(2d) 709.

■■ The plaintiff in error's application for writ of error was granted upon the following proposition, under the first assignment: "Under the Workmen's Compensation Act a compromise settlement made between an injured man and the compensation insurance company duly approved by the Industrial Accident Board, the money being paid, constitutes a bar to any further claim on his part for compensation, in the absence of the showing of fraud, accident or mistake and where such a claim has been duly compromised and settled, with the approval of the Board, the injured claimant is not entitled to recover additional compensation on the sole ground of a showing of a change in his condition after the compromise settlement."

We think this proposition states the law of this case, and to the extent that the opinion of the Court of Civil Appeals holds to the contrary, it is error.

Section 5 of article 8307 of the same act recognizes the right of the party to make a settlement provided for in section 12. Section 5 is as follows: "All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the Board." In Jenkins v. Texas Employers' Insurance Association (Tex. Civ. App.) 211 S. W. 349, in which a writ of error was refused, similar provisions, under the Workmen's Compensation Act of 1913, were construed in accordance with the law announced in the above proposition. The Court of Civil Appeals, in holding that a compromise agreement by the parties, duly approved by the board, could be set aside

upon the showing of the change of condition of the injured party, based its holding on section 12d of article 8306, which permits the board, upon a showing of a change of condition, mistake, or fraud, to review a previous award. This section of the act is an entirely separate one from that dealing with the subject of compromise. The law must be construed so as to give effect to all its parts, if it can be done. The Legislature has seen fit to authorize a settlement by compromise for either of two reasons,· one being where the liability of the association is. uncertain, and the other where the injury of the employé is uncertain, indefinite, or incapable of being satisfactorily established.

In Texas Employers' Insurance Association v. Ezell (Tex. Com. App.) 14 S.W.(2d) 1018, in speaking of the power of the parties to make an agreement and settlement of their differences, it is said: "There is nothing in the compensation statute * * * to prevent the parties in making any compromise and settlement of the suit they may choose to make." In re McCarthy, 226 Mass. 444, 115 N. E. 764, wherein the facts are very similar to those in this case, under a like provision of the law, the Supreme Court of Massachusetts held that a settlement on a lump sum basis, by way of a compromise, between the compensation insurance company and the injured employé, was a complete bar to any further claim on the part of the employé for injuries from the accident in question, even though the effects thereof developed after the settlement, and were unknown at the time of the settlement. The section of the act making provision for the approval of compromise settlement presupposes an uncertainty either as to the liability of the insurance company or the extent or nature of the injury to the employé.

In this case evidently the insurer claimed there was no liability, basing its claim upon the contention that the injury to the eye was not the result of any accident happening while the employé was working for his employer, who had taken out insurance with the plaintiff in error for the protection of its employés. Upon the other hand, the employé evidently claimed that liability existed because the disability was due to the accident happening as stated in the petition. The issue thus drawn was not determined by the board. The action of the board in approving the settlement was predicated upon a disagreement on the point as to which no adjudication by the board was sought. The record shows that the parties contemplated the possibility, if not the probability, of the necessity to remove the injured eye. The agreement was entered into in contemplation of a possible change of condition for the worse. If, because of the change of condition contemplated by the parties, the defendant in error is entitled to revoke the provisions of section 12d of article 8306, then it would also be true that, if the defendant in error's condition had changed for the better, the plaintiff

in error would also be entitled to reopen the case on that ground.

Section 12, art. 8307, evidently presupposes the existence of a condition, under which the parties have agreed that they desire, in lieu of an award of the board, a friendly settlement. It contemplates a suspension of the board's action in determining the issue of fact and a substitution for the board's action of an agreed settlement independent of the statute, fixing the amount of compensation. In making the settlement, the parties necessarily contemplated a subsequent change in the employé's condition. Aside from the question of fraud and mistake, the substance of the claim of defendant in error is that his physical condition had changed, and upon that he bases, in part, his right to reopen the case and have an adjudication of the issues involved. We do not think he is entitled to have this done.

■ The Court of Civil Appeals in its opinion, with reference to the allegations of fraud, accident, and mistake alleged in the petition of the defendant in error, says: "We think, also, that it [meaning the evidence] raises an issue as to the actual existence of the facts stated in the compromise agreement as the reason for the execution of said agreement and its approval by the Industrial Accident Board." This is an adjudication by the Court of Civil Appeals that the testimony is sufficient to carry the case to the jury upon the allegation of fraud, accident, and mistake contained in the petition. The amended petition of the defendant in error, in the absence of special exceptions, was sufficient to admit testimony that the execution of the instruments, evidencing the compromise settlements, was procured by fraud. When the circumstances outlined by the testimony are considered, embracing the relative condition and situation of the parties, and what the agent of the plaintiff in error communicated to the defendant in error, as reasons why it was to the interest of the latter to sign the papers, are given consideration, we cannot say there was no evidence of a substantial nature upon which the issue of fraud could have been determined by the jury, in favor of the defendant in error. The Court of Civil Appeals was clearly within its rights when it concluded that this issue, on this question, should have been submitted to the jury for its determination.

Since we have held that the written instruments, upon their faces, were sufficient to conclude the rights of the parties, but that the issue of fraud, in securing their execution, should have been submitted to the jury, in view of another trial of the case, we suggest that the defendant in error be required by the trial court to replead his cause of action, excluding any allegation with reference to a change of condition on the part of the defend-

ant in error, and confine the allegations in his pleading to his claim to reopen the case upon the question of fraud, in securing the execution of the so-called compromise agreement. The amended petition, upon which the case was tried, is unnecessarily prolix, and yet, as against special exceptions which might have been leveled at it, it is clearly deficient, and, as against timely objections to the introduction of certain testimony, was not sufficiently broad to admit the same.

One of the executed instruments appears to have been signed by the wife of the defendant in error, after she had read it. This fact might have some probative force in support of the contention of the plaintiff in error that the defendant in error himself was thus enabled to understand its full import at the time he signed it, upon the natural conclusion that the wife was, by experience and acquirement, possessed of the ability to understand and appreciate the meaning of the instrument, and that she had communicated this knowledge to her husband. However, there was an allegation and proof to the effect that the agent of the plaintiff in error had sought out the defendant in error at a time when the latter was sick, despondent, practically blind, and perhaps in pecuniary distress, and by means of threats to carry the case into the courts and defeat the claim of the defendant in error there, upon the one hand, and by promises to take care of him in case he should become needy, upon the other, and further that the defendant in error was inexperienced in such matters, while the agent of the plaintiff in error was specially equipped to take care of the interest of his principal, thus and thereby inducing the defendant in error to execute the instruments, which otherwise he would not have done. The signature of the wife to the instrument was not essential to its validity, and yet, she having signed one of them, with the pleading and proof in this condition, a jury would be confused in properly weighing this testimony, and in danger of doing one or other of the parties an injustice on account of its introduction. There are many other inconsistencies presented by the prolix pleading and the character of the evidence introduced which we will not mention, further than to say that the best evidence of good pleading is the fact that a cause of action is as briefly stated as possible to state it clearly, and yet broad enough to admit every phase of the testimony pertinent thereto.

We recommend that the judgment of the Court of Civil Appeals reversing that of the district court and remanding the case for another trial be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, and cause remanded for new trial in the district court, in accordance with opinion of the Commission of Appeals.